May it please the Court, I'm Deputy Federal Public Defender Jennifer Turner for Appellant Bae Hyuk Shin. I'd like to reserve two minutes for rebuttal. In this Confrontation Clause case, I'll begin by addressing one point concerning whether the statements at issue were testimonial. And then, unless Your Honors have further questions on that point, I'll turn to the harmfulness of the confrontation violation in this case, particularly in light of the fact that this was Mr. Shin's second trial and that the first jury had hung on the issue of guilt. Is it 11 to 1? It was, Your Honor. Do you really attach a lot of significance to the fact that one juror wasn't convinced the first time and the second time nobody was convinced? I believe it is significant, Your Honor, because the question when we get to whether the error in this case was harmful is whether there was a substantial and injurious effect on the verdict. And we're looking at whether, basically, whether one juror might again have had a question as to whether the prosecution had carried its burden beyond a reasonable doubt. The fact that a juror had previously had such a question shows that it's not at all unreasonable or speculative to think that there could have been a similar outcome in this case, where, again, the evidence presented at the trial was so similar to the evidence presented at the first trial, apart from the absent declarant who actually conducted the autopsy of decedent Sang Shin. Just briefly on the issue of whether the autopsy report was testimonial, I'd like to emphasize the fact that this inquiry should be made on a case-by-case basis. The question before this Court is not whether autopsy reports are, in all cases, always testimonial. And I believe that's something that may have gotten somewhat obscured in some of Respondent's I think we can probably all agree that the Supreme Court's jurisprudence on this issue is a mess, especially after Williams. So, from my perspective, my colleagues may want more on the confrontation issue, but let's just assume for a moment that it is, it is    it meets all the requirements and that we get to the issue of harmfulness and harmlessness under Brecht. Would you argue that, at least from my perspective, that's really the turning point here, is given the facts of this case and the corroborating evidence from a variety of folks besides the report that's the subject of the confrontation issue, how do you get around all of that other testimony? Isn't the evidence pretty overwhelming? Well, I'd like to clarify exactly what it is that was the source of the confrontation violation and then explain why it is that there actually wasn't other corroborating evidence on those particular points. So, within the autopsy report that was parroted, basically, to the jury by Dr. Sherry's testimony, there were a handful of statements that contradicted, or at least arguably contradicted, Mr. Shin's self-defense testimony and were not independently offered as opinions by Dr. Sherry. And those items, there are basically three relevant items. One was the absence of stippling on the chest wound. As to the other two wounds, Dr. Sherry looked at photographs and offered an independent opinion as to the presence of stippling. With respect to the chest wound, Dr. Sherry was never asked and never offered any independent opinion as to whether or not stippling was absent. You're going back to the issue that I said, at least from my perspective, is really not ultimately what you get to. Let's assume all of that is true. How do you deal with the statement that he made to his mother? How do you deal with the statement he made to the journalist and so on? These are independent things that have nothing whatsoever to do with a confrontation clause that the jury could have relied upon, in part, to reach its verdict, right? Well, Your Honor, the statement that Mr. Shin made to his mother was simply, I shot. And this wasn't a question of... Was what? The statement was, I shot. I shot? I shot. He was overheard saying the words, I shot. Oh, I shot. Yeah, okay. And the context of his being... You're using some kind of a German lab word or something. The context of his being overheard making that statement was that he was about to go into surgery, it was an emergency situation, and a neighbor testified that he overheard Mr. Shin simply say the words, I shot. Those words in and of themselves prove absolutely nothing about whether or not Mr. Shin shot in self-defense. If he shot in self-defense, he still shot. The other reason that those words prove nothing about whether or not he disputedly shot himself. So the ambiguity of those words, was he referring to the shooting of the decedent? Was he referring to the shooting of himself? We don't know, we don't know... What about the fact that the gun could have only fired by the trigger being pulled back? His story doesn't fit with that, does it? Well, it arguably does, Your Honor, because in the struggle as it occurred, as explained by Mr. Shin in his testimony, both men were trying to fire the gun. They were struggling over the gun, they both had their hands on it, and if, whether it was a decedent saying Shin trying to fire at my client... You have to physically pull the trigger back in order for it to fire. This one man was shot three times. How does that happen accidentally? I don't believe the testimony was so much that it happened accidentally as it happened during a struggle. Okay, well, so even if during a struggle. I mean, one, maybe. Three? Can't the jury say, wait a minute, this doesn't make any sense? This couldn't have been self-defense, totally independently of what the coroner said. The shots, the first two shots, were fired during the struggle, and during that time, Mr. Shin testified that decedent saying Shin was trying to shoot him. So it stands to reason that saying Shin would have been trying to pull the hammer back. If he was trying to shoot my client, it was necessary for him to get the gun in operating condition in order to fire those shots. Okay, I hear your point, but the reality is, what we're talking about here is, is there evidence that was presented to the jury, independent of the confrontation issue in the lab, that the jury could have believed undermined your client's self-defense issue? And the point is that when you have somebody shot three times, it's somewhat strange credulity that three different times, someone physically pulled the hammer back and got shot three times while they were wrestling for it. Just to clarify, the third shot Mr. Shin testified was actually, he had gotten the gun and saying Shin was lunging toward him, trying to retake the gun. So the third shot was in a somewhat different context. Okay, so then two of the three shots, you have the same problem, right? Again, Your Honor, my response is simply that someone was trying to fire the gun. Saying Shin was trying to fire the gun, and it's not inconsistent with saying Shin trying to fire the gun, that the gun was being put in operating order to fire a shot. With respect to the other evidence, a couple of other pieces of evidence that were offered by the prosecution against Mr. Shin, it's really significant that the jury responded on the row charges with a second-degree murder verdict instead of a first-degree murder verdict because it shows that they actually disregarded some of this evidence or they didn't credit what the prosecution argued. One of the pieces of evidence that responded has relied on and that the prosecution relied on was a letter that was purportedly a murder-suicide note. As we explained in the briefing, had the jury credited the prosecution's explanation of that very ambiguous note as being a murder-suicide note, they would have had to have found that the murder of G. Rowe was murder in the first degree because it would have been premeditated. Clearly, they rejected that evidence in reaching their verdict. With respect to the testimony of the newspaper reporter, which Your Honor referenced, again, the jury, by reaching a second-degree verdict, must have rejected the prosecution's spin on that testimony because if they credited the testimony of the newspaper reporter who admitted that he had taken no notes during the interview and that he had sensationalized the story as much as possible, they would have had to find that the murder of G. Rowe was premeditated, basically a committed execution style. So some of this other evidence that has been relied on by respondent to show the strength of the case against Mr. Shin was plainly rejected by the jury in this case. One other thing to keep in mind here is that the prosecution had the burden to prove beyond a reasonable doubt that Mr. Shin did not act in self-defense. The burden was not on Mr. Shin to prove that he did. And I think from that perspective, this testimony that came in actually was harmful because it arguably contradicted Shin's testimony as to why he acted in self-defense. Unless Your Honors have further questions at this time, I'll reserve my second or two for rebuttal. Thank you, Counsel. Thank you. Good morning, Your Honors. Deputy Attorney General Dana Muhammad-Ali on behalf of the Warden. May it please the Court. The District Court's judgment should be affirmed because the California Court of Appeal reasonably determined that any confrontation error was harmless beyond a reasonable doubt. And indeed, this case does turn on that harmlessness determination, and this Court must defer to the State Court's determination in that regard unless this Court finds that the State Court's application of Chapman was actually unreasonable, which it was not. Turning very briefly to the first question of whether there was any confrontation error at all, the District Court properly found that no such error occurred in this case, and that was for several reasons, the most important being that no autopsy report was ever admitted into evidence in this case, which makes this case distinguishable from both Melendez-Diaz and Bullcumming. Second, it was proper for Dr. Sherry to rely on Dr. Ponchall's findings in rendering his Well, he didn't more than just rely. He kind of parroted back what Dr. Ponchall had said. He did read, he was responding to the He didn't look at it and say, you know, I've looked at this and here are my opinions based on what I've read. He went much further than that. But Dr. Sherry then turned around and gave his own opinion as to But he still parroted Dr. Ponchall's statements that he made in his report. Dr. Sherry was simply responding to the prosecutor's questions regarding what was in Dr. Ponchall's It doesn't make any difference who he was responding to. He was asked and he parroted back Dr. Ponchall's report. What difference does it make? In this case, the difference is that instead of him just parroting back Dr. Ponchall's findings, he rendered his own expert opinion, which was permissible both under California law and under federal law. And in any event, Dr. Ponchall's findings were not testimonial. Autopsy reports have never been found by the Supreme Court to be testimonial. They've never decided that question. The Second Circuit, the state of California, and even this court in an unpublished opinion, affirmed a state court's finding that an autopsy report was non-testimonial. And that's because autopsy reports don't have the primary purpose. They fail the primary purpose test that has been outlined by the Supreme Court. And what was actually admitted in this case, the diagram itself of Dr. Ponchall's findings, lacked the requisite formalities of what has been found to be testimonial. So the district court's findings in this regard were correct. In any event, even if any confrontation error occurred, again, this court must defer to the state court's finding of harmlessness under Chapman, unless that finding itself was unreasonable. And in this case, it was not. The state court applied the five Van Arsdale factors, and in weighing those factors, determined that any error was harmless beyond a reasonable doubt. And that was because this case did not turn on the coroner's testimony. In fact, the coroner's testimony regarding stippling supported Petitioner's self-defense theory, supported the theory that the shooting occurred during a struggle. What was the most powerful evidence here was Petitioner's own testimony. The jury was able to view Petitioner's demeanor. He testified to his version of the of his previous statements, both to his neighbor and to the newspaper reporter, and even while on the stand, Petitioner changed his story during cross-examination. So that really was the most powerful piece of evidence. And for those reasons, the state court's determination was reasonable. Thank you. Thank you, your honors. You have no time, but we'll give you 30 seconds to a minute. Okay. Thank you. Just briefly, I'd like to emphasize that as we stated in the briefs, Ayala did not change the fact that Brecht is the correct test for assessing harmless error. Ayala simply reiterated that the Brecht test subsumes the question of whether the state opinion was unreasonable or not. However, if... But we do, under that test, have to defer to the state court's analysis, do we not, under the facts of this case? If the court does take a look at whether the state court's opinion was unreasonable, rather than simply applying Brecht in the first instance, this court should find that the state's because the facts that were cited by the state court in support of its harmless error finding were as consistent with innocence as with guilt. The facts that they said other evidence showed about the shooting of Tseng Shin were simply facts showing that he was shot and that Mr. Shin was the person who shot him. Those questions weren't in dispute. May I have another second to finish my... Yes, go ahead. Thank you, your honor. And additionally, the state court's opinion ignored all of the ways in which Dr. Sherry's testimony was harmful to Shin and focused exclusively on the ways in which it was helpful. And in so doing, that was an unreasonable application of Chapman because the court simply cherry-picked pieces of evidence without looking at the evidence as a whole in assessing harmless error. Thank you. Thank you, your honor. Thank you. Next case for argument is Benjamin v. Gibson.
judges: Reinhardt, Paez, M. Smith